Electronically Filed
3/11/2026 1:57 PM
First Judicial District, Kootenai County
Jennifer Locke, Clerk of the Court
By: Maya Vanderschaaf, Deputy Clerk

**Craig D. Dillard**
Texas State Bar No. 24040808 (*Pro Hac Vice Motion Forthcoming*)
Craig.Dillard@nelsonmullins.com
**Jason P. Sharp**
Texas State Bar No. 24039170 (*Pro Hac Vice Motion Forthcoming*)
Jason.Sharp@nelsonmullins.com
**Kiara C. Gradney**
Texas State Bar No. 24097754 (*Pro Hac Vice Motion Forthcoming*)
Kiara.Gradney@nelsonmullins.com
1111 Bagby Street, Suite 2100
Houston, Texas 77002
Telephone:  346-646-6670
Facsimile:  346-241-3758

**Katherine "Katy" Spicer** ISB# 11853
katy.spicer@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
101 Constitution Avenue, NW, Suite #900
Washington, D.C. 20001
Telephone:  202-689-2917

*Attorneys for Radiology Associates of North Idaho, Inc.*

## DISTRICT COURT FIRST JUDICIAL DISTRICT
## KOOTENAI COUNTY, IDAHO

| | | |
|---|---|---|
| RADIOLOGY ASSOCIATES OF NORTH IDAHO, INC., <br><br> Plaintiff, <br><br> v. <br><br> CHANGE HEALTHCARE TECHNOLOGY ENABLED SERVICES, LLC, <br><br> Defendant. | § § § § § § § § § § § § | CASE NO. CV28-26-1845 _____ |

### <u>PLAINTIFF'S ORIGINAL COMPLAINT</u>

Plaintiff Radiology Associates of North Idaho, Inc. by and through its counsel, states the

following for its Original Complaint against Defendant Change Healthcare Technology Enabled

Services, LLC (the "Defendant").

4937-1106-0345

Cafferty (District), John

## I.    PARTIES

1.    Plaintiff Radiology Associates of North Idaho, Inc. ("RANI") is a professional service corporation organized and existing under the laws of Idaho with its principal place of business in Coeur d'Alene, Idaho. RANI is a citizen of Idaho.

2.    Change Healthcare Technology Enabled Services, LLC ("Change Technology") is a limited liability company organized and existing under the laws of the state of Georgia with its principal place of business in Eden Prairie, Minnesota.

## II.    JURISDICTION AND VENUE

3.    This Court possesses subject matter jurisdiction over this matter pursuant to Idaho Code Section 5-514(a)-(b) because the transaction central to the matter at hand took place within Idaho and Defendant committed tortious acts within the state.

4.    Venue is proper in Kootenai County, Idaho pursuant to Idaho Code § 5-504, because it is the county in which the cause of action arose.

## III. FILING FEE INFORMATION

5.    This case falls within filing fee category A.A. of Appendix "A" to the Idaho Rules of Civil Procedure. The filing fee prescribed is $221.00.

## III.    FACTUAL ALLEGATIONS

6.    RANI is a medical services provider, providing radiology services to the public in the northern Idaho area.

7.    Change Technology is the successor in interest to a Practice Management Services Agreement dated April 29, 2011 (the "Management Agreement") with RANI.[1]  Upon information

---

[1] Exhibit A, Practice Management Services Agreement; Exhibit B, May 11, 2018, Amendment to Practice Management Services Agreement.

4937-1106-0345

and belief, in 2017, Change Technology entered a joint venture with McKesson Corporation. As a result of the joint venture, Change Technology became the successor-in-interest to PST Services, Inc. ("Per-Se") and, through its subsidiaries, predecessors, and affiliates, succeeded to all rights and obligations under the Management Agreement with RANI.[2]

8.       Under the Management Agreement, Change Technology was obligated to provide a significant number of services that include, *inter alia*, processing RANI's patient charges, timely submitting claims for RANI's charges to insurance companies and other payers, collecting payments, pursuing accounts receivable, overseeing the repayment of refunds, processing denials, and forwarding unpaid claims to collections agency with RANI's approval (the "Services"). Such services are a necessary part of RANI's day-to-day operations.

9.       Typically, payments for healthcare services follow this process: providers, such as RANI, submit charges for healthcare services as claims to health insurers, also referred to as "payers," who then process and pay those claims. The process starts when a patient seeks care from a healthcare provider like RANI. Following treatment, the healthcare provider or its billing company submits a claim to the payer to receive compensation for the services provided. Before issuing payment, the payer reviews the claim to assess the appropriate payment amount, if any, for the services rendered. The payer then provides the healthcare provider with an electronic remittance advice (ERA), detailing the claim, the approved payment amounts, and any denials, before processing the payment. Change Technology was responsible for handling and overseeing the claims and reimbursement process, as well as processing and follow up on denials from payers and collecting outstanding accounts receivable.

---

[2] Exhibit B, May 11, 2018 Amendment to Practice Management Services Agreement.

10.     Under the Management Agreement, Change Technology agreed to, among other things, timely submit electronic filings with third-party payers, major insurance carriers, Medicare and Medicaid, provide monthly management reporting, follow up on delinquent insurance accounts, collect accounts receivable, and notify RANI of unpaid accounts.[3] Every payer has a different prescribed period by which submissions must be made. Plaintiff alleges that "timely" submissions means Change Technology was supposed to submit outstanding patient accounts prior to the payer's prescribed deadlines so that the patient accounts would be paid by Medicare, Medicaid, or the patient's insurance. However, that did not happen. The failure to timely submit those accounts caused Plaintiff damages as those accounts were not paid.

### IV.     UnitedHealth Group Buys Change Healthcare

11.     In January 2021, UHG agreed to purchase Change Healthcare, Inc. and its affiliates, subsidiaries, and assigns for approximately $13 billion.[4]

12.     In October 2022, following a Department of Justice antitrust investigation and trial, the merger was ultimately approved, and UHG finalized its acquisition of Change Healthcare and integrated its operations under its existing umbrella organization, Optum.[5]

13.     In support of the merger, UHG and Change Healthcare claimed that the merger would result in significant benefits to the healthcare system, including simplifying and accelerating physician billing and patient payment processes, accelerating cash flow to providers, lowering financial burdens, decreasing the frequency of denied claims, and "minimize[ing] the amount of friction between payers and providers.[6]

---

[3] Exhibit A, Practice Management Services Agreement Schedule 1, § I.
[4] *US. v. UnitedHealth Group Inc., and Change Healthcare Inc.*, 1:22-cv-481, Post-Trial Memorandum Opinion, Dkt. No. 138 at 8 (D.D.C. Sept. 21, 2022).
[5] *Id*.
[6] *Id*. at 8-9.

14.    After completion of the merger, UHG "acquired all of the outstanding common shares of Change Healthcare" and, thus, wholly owns Change Healthcare.[7]

15.    After Change Healthcare integrated with Optum, employees from Optum started emailing and meeting with RANI to discuss Change's performance under the Management Agreement, and it was unclear to RANI whether they were in business with the Change or Optum.

**V.    Breach of Contract Following Change Healthcare's Acquisition**

16.    After the October 2022 merger and acquisition by UHG, Change Technology started using a new platform, protocols, and staff to provide the billing and management services under the Management Agreement, and Change Technology's performance started to decline. Meaning, RANI's accounts receivables' balance increased in 2022, and continued thereafter, beyond what would be acceptable in the industry due to increased processing times, failing to submit physician charges by the payer's submission deadline, not effectively processing denials, and not resolving outstanding accounts receivables.

17.    The provision of the Management Agreement that establishes the industry practice for Change Technology's obligations under the contract is in Section 9 of the Management Agreement.[8] Change Technology agreed to the reliability of its services to be measured against industry practice when it agreed to perform according to industry practice in RANI's specialty and geographic area, including third-party payer policies and procedures.[9]  Plaintiff alleges that not timely submitting electronic filings with third-party payers, major insurance carriers, Medicare and Medicaid, failing to provide accurate monthly management reporting, failing to follow up on delinquent insurance accounts, failing to collect accounts receivable, not processing denials, and

---

[7] *Id*. at 9.
[8] Exhibit A, Practice Management Services Agreement at § 9.
[9] *Id*.

not notifying RANI of unpaid accounts falls below the industry practice.  Furthermore, as more fully described in the following sections of this Complaint, Change Technology promised to timely submit electronic filings with third-party payers, major insurance carriers, Medicare and Medicaid, provide monthly management reporting, follow up on delinquent insurance accounts, collect accounts receivable, and notify RANI of unpaid accounts.[10]  Change Technology's failure to perform the Service in accordance with the industry standards and the Management Agreement led to diminished collection rates, and ultimately RANI's damages.

18.    Additionally, Change Technology stopped sending RANI's collections agency, Chapman Financial, accounts that historically should have been sent to the agency for further collections attempts; and in some cases, unilaterally sent accounts without RANI's approval. Sending accounts to a collections agency with RANI's approval is the industry practice and a practice that Change Technology subscribed to over the course of the parties' relationship. Because Chapman Financial did not receive such accounts, no further collections attempts occurred outside of what Change Technology purportedly did, compounding the issue of Change Technology not collecting RANI's accounts receivables and even further adding to RANI's damages.

19.    Change Technology's breach of the Management Agreement was not immediately apparent to RANI due to the ordinary lag time during which claims are submitted, verified, and collected. Change Technology's poor performance under the Management Agreement became apparent to RANI, and it was the source of concern in discussions between the parties. However, Change Technology reassured RANI that it could catch up on collections. After several requests, Change ultimately released the billing file containing RANI's legacy accounts receivable data. However, the file was materially incomplete and omitted critical patient demographic information,

---

[10] Exhibit A, Practice Management Services Agreement at § 9; *Id*. at Schedule 1.

including patient mailing addresses. Without this information, RANI was unable to generate and send billing statements or collection notices to patients with outstanding balances, thereby impairing RANI's ability to collect on those accounts and causing additional delay, expense, and financial loss. Furthermore, Change Technology's omissions prevented RANI from fully realizing the scope of Change Technology's failures and the associated damages.

20.    Despite explicit instructions from RANI not to do so without preauthorization, Change unilaterally referred a substantial number of patient accounts to third-party collections. On multiple occasions, RANI expressly instructed Change Technology via email not to send any accounts to collections without first obtaining RANI's approval. Change Technology disregarded those instructions. As a result, numerous patients were improperly sent to collections for medical bills they had never received, which triggered hundreds of complaints from upset patients directed at RANI. Change Technology's actions damaged RANI's patient relationships and reputation and interfered with RANI's transition to a new billing company, which otherwise could have properly worked and collected on those outstanding accounts.

21.    Based on historic trends and performance standards in the industry, and even RANI's own trends and performance, a healthcare practice's accounts receivable should roughly track the volume of its charges and be consistent with the gross collection rate of the charges. That did not occur after the merger.

22.    After the 2022 merger, Change Technology's insufficient billing practices and poor collection rate caused RANI's revenue from charges to begin to diverge sharply from RANI's total charges.

23.     Change Technology's failure to timely process, efficiently bill, and later collect on claims resulted in a substantial growth in unpaid accounts receivable, even though there largely was not a corresponding increase in the volume of charges.

24.     Because of Defendant's default, and in attempt to mitigate their losses, RANI started to research new billing software and systems—as well as vendors—that might be needed to remedy the ongoing disparity in billed charges and collections from filed insurance claims.

25.     RANI further alleges that the delays, losses, and costs described herein were not the product of ordinary business fluctuations or the inherent risks of healthcare billing. Rather, they were the direct result of Change Technology's deviation from the ordinary and expected course of performance under the Management Agreement and from established industry standards, as expressly required by Section 9 of the Addendum.[11] In the time preceding Change Technology's acquisition by UHG, RANI's accounts receivable and collections consistently tracked charges at a rate in line with its own historical and industry benchmarks, with timely claim submissions, appropriate denial management, and forwarding of delinquent accounts to collections agencies with RANI's preauthorization. The marked departure from these outcomes reflects a material breach of the Management Agreement, because such damages would not have occurred had Change Technology performed in accordance with the Management Agreement and its industry-standard obligations.

26.     This lawsuit concerns RANI's damages that accrued prior to February 2024.

## COUNT I:
## BREACH OF CONTRACT

---

[11] Exhibit A, Practice Management Services Agreement at § 9.

27. RANI realleges and incorporates by reference paragraphs 1 through 26 of this Complaint as if fully set forth herein.

28. Defendant entered into a valid and enforceable contract with RANI, as reflected in the Management Agreement.

29. In the ordinary course of business, Change Technology contracted with healthcare providers, such as RANI, to deliver its Services. These Services enable Change Technology to act as an intermediary between healthcare providers and insurance companies. Healthcare providers submit insurance claims through Change Technology's platform, which then forwards them to the insurance companies. After evaluation and processing, the insurance companies make payments to the healthcare providers.

30. RANI paid for these Services.

31. In exchange for RANI's payment, Change Technology promised, among other things, to deliver Services in accordance with the industry standards. This included processing insurance claims, managing accounts receivable for RANI, and fully equipping and staffing a billing office operation to handle billing, reimbursement, collections, and billing management functions necessary to optimize RANI's collections of reimbursement for claims filed to insurance companies.

32. Defendant breached its contractual obligations by failing to perform the agreed-upon Services as described in paragraphs 1 through 25 of this Complaint. These breaches included but were not limited to not timely submitting electronic filings with third-party payers, major insurance carriers, Medicare and Medicaid, providing accurate monthly management reporting, following up on delinquent insurance accounts, collecting accounts receivable, not forwarding to Chapman Financial delinquent accounts that historically would have been sent to the agency for

4937-1106-0345

further collections attempts, and notifying RANI of unpaid accounts as required by the following

contract terms:

**The Management Agreement**

    a.   Section 1: Per-Se will begin to perform the physician practice management services set forth on Schedule 1.

    b.   Section 9: Per-Se agrees to perform the Services in accordance with industry practices in Client's specialty and geographic area and all material applicable laws, rules and regulations, including applicable third-party payer policies and procedures.

**Schedule 1 of Management Agreement: Scope of Services:**

    a.   Handle all accounts in accordance with all applicable laws.
    b.   Bill managed care accounts in accordance with the terms of Client's executed contracts. If no contract exists, bill such accounts in accordance with the rules of the state in which care was provided or, if no state rules apply, in accordance with Per-Se's normal business procedures."
    c.   Accept electronic filing with Medicare, Medicaid and Blue Shield, and other third-party payers, where applicable.
    d.   Provide electronic filing with all major insurance carriers, where applicable.
    e.   Provide electronic remittance from Medicare and all other carriers, where applicable.
    f.   Provide monthly management reporting and additional custom reports requested by client manager at no cost to client.
    g.   Follow up on delinquent insurance accounts.
    h.   If Client requests Per-Se to forward its unpaid billings to a collection agency or law firm ('Collection Agent'), Per-Se will transmit the information required by the Collection Agent chosen by Client either by hard copy or electronically, in a mutually acceptable format, as requested by such Collection Agent, pursuant to instructions provided to Per-Se by Client.

These failures directly disrupted RANI's ability to access the Services it paid for and interrupted

its normal revenue stream, causing damages.

33.      RANI further alleges that the delays, diminished collections, and additional costs

incurred were not consistent with the standard course of performance under the Management

Agreement or within the healthcare billing industry. Prior to Change Technology's acquisition by

UHG, the billing and management services provided under the Management Agreement

4937-1106-0345

consistently resulted in collections that closely tracked RANI's gross charges, timely submission of claims, and regular forwarding of delinquent accounts to collections with RANI's preauthorization, all of which reflected adherence to the industry standards. The divergence in collections and the growth in receivables only began after Change Technology implemented new platforms, protocols, and staff. In the ordinary course of performance—had Change Technology complied with the industry standards and its contractual obligations, as required by Section 9 of the Management Agreement—such backlogs, missed deadlines, and inflated receivables balances would not have occurred. Accordingly, the losses RANI suffered were a direct and foreseeable result of Change Technology's failure to maintain ordinary practices, and not due to any inherent risk or natural fluctuation in the industry.

34.    As a direct and proximate cause and foreseeable consequence of Change Technology's breaches, as more fully described in paragraphs 1 through 33 of Plaintiff's Complaint, RANI has suffered harm and is entitled to compensation in an amount to be determined at trial. These damages arose not from ordinary fluctuations or inherent risks in the billing cycle, but from Change Technology's deviation from the industry-standard course of performance required under the Management Agreement, as expressly set forth in Section 9 of the Management Agreement.[12] In the normal course of performance—had Change Technology adhered to the industry standards and its contractual obligations—such losses would not have occurred. For example, Change Technology would have submitted patient insurance claims within the time periods prescribed by Medicare, Medicaid, and third-party payers, not after those deadlines. Because Change Technology submitted patient accounts after those deadlines, payers rejected

---

[12] *See* Exhibit A, Practice Management Services Agreement at § 9.

payments for RANI's services, RANI did not collect on those accounts, and damages were incurred.

35.     Accordingly, RANI is entitled to recover damages flowing from Change Technology's failure to perform in accordance with Section 9.

## COUNT II:
## UNJUST ENRICHMENT

36.     RANI realleges and incorporates by reference paragraphs 1 through 35 of this Complaint as if fully set forth herein.

37.     In the alternative, if no enforceable express contract is found to exist between RANI and Change Technology, RANI asserts a claim for unjust enrichment against it. RANI conferred a benefit on Change Technology by paying fees for Change Technology's services and relying on Change Technology's platform for essential billing management, which allowed Change Technology to maintain its market position and generate revenue from data processing following its acquisition by UHG.

38.     Change Technology knowingly accepted and retained those benefits, including revenue from processing RANI's claims, even after its performance declined below industry standards.

39.     Change Technology's retention of these benefits is unjust because it profited from the fees without providing RANI the services that it bargained for. Specific benefits include fees paid by RANI and the volume of claims data provided, which Change Technology monetized despite failing to submit claims timely, process denials, or forward to collections with RANI's preauthorization.

40.     It would be inequitable for Change Technology to retain these benefits without compensating RANI for the resulting damages.

4937-1106-0345

## COUNT III:
## <u>NEGLIGENCE</u>

41.    RANI incorporates by reference paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42.    Change Technology owed RANI a duty of care under common law, arising from their special relationship as a provider of essential billing and data processing services, to exercise reasonable care in handling RANI's claims submission and collections services required under the Management Agreement. This duty includes timely submitting claims to payers, processing denials, and following up on delinquent accounts, and forwarding unpaid accounts to collections in accordance with industry standards and the parties' historical practice. This duty exists independent of the Master Agreement, as Change technology held itself out as a reliable platform for healthcare billing.

43.    Change Technology breached its duty by: (a) failing to timely submit claims to payers prior to deadlines, leading to unpaid accounts; (b) failing to process denials effectively; (c) failing to follow up on delinquent accounts; (d) failing to forward delinquent accounts to RANI's collections agency with RANI's preauthorization consistent with industry and historical practices; and (e) providing inaccurate or incomplete monthly reporting.

44.    Change Technology's breaches were the direct and proximate cause of RANI's injuries, as they led to the untimely claims processing and failure to collect receivables which would not have occurred if Change Technology had exercised reasonable care.

45.    As a direct and proximate result of Change Technology's negligence, RANI suffered damages.

## COUNT IV:
## <u>FRAUDULENT INDUCEMENT</u>

46.     RANI incorporates by reference paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47.     Change Technology fraudulently induced RANI to continue under the Master Agreement by making false representations about its compliance with industry standards for billing. This representation was false and made with knowledge of its falsity or reckless disregard for the truth, as Change Technology knew of its performance issues.

48.     Change Technology intended for RANI to rely on these representations to induce continued use of the platform. The false statements were material in that, if RANI knew the truth about the ineptitude of the platform, it would not have contracted with Change Technology.

49.     RANI justifiably relied on these representations when continuing to contract with Change Technology and providing data.

50.     As a direct and proximate result of Change Technology's fraudulent inducement, RANI suffered damages.

**COUNT V:**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIP**

51.     RANI realleges and incorporates by reference paragraphs 1 through 50 of this Complaint as if fully set forth herein.

52.     RANI had a reasonable expectation of economic advantage in its prospective business relations with payers (Medicare, Medicaid, major insurance carriers, and third-party payers) and patients, including the timely receipt of payments for services rendered, based on historical collection rates, industry standards, and the volume of claims submitted. These expectations were grounded in RANI's ongoing provision of radiology services and the standard reimbursement process in the healthcare industry.

4937-1106-0345

53.     Change Technology had knowledge of RANI's reasonable expectations of economic advantage, as it was responsible under the Master Agreement for processing claims, collecting payments, and managing accounts receivable on RANI's behalf, and was aware of RANI's reliance on timely reimbursement for its operations.

54.     Guided by its motive to keep RANI in the Master Agreement despite not providing the Services according to industry standard, Change Technology interfered with RANI's reasonable expectations of economic advantage through independent tortious conduct, including its negligent or reckless deviations from industry standards in billing practices, such as failing to timely submit claims, process denials, follow up on delinquent accounts, and forward accounts to collections with RANI's preauthorization. This interference was independently tortious under common law negligence principles and violated state standards for handling healthcare billing.

55.     In the absence of Change Technology's wrongful acts, it is reasonably probable that RANI would have realized its expected economic advantages, including timely payments from payers and patients, consistent collection rates, and stable accounts receivable balances aligned with charge volumes.

56.     As a direct and proximate result of Change Technology's tortious interference, RANI suffered damages.

## VI.     DISCOVERY RULE-TOLLING OF STATUTE OF LIMITATIONS

57.     RANI's claims are timely under the discovery rule, which tolls the statute of limitations until the plaintiff knew, or through the exercise of reasonable diligence should have known, of the facts giving rise to the claim. In this case, the harm suffered by RANI, as well as the underlying wrongful conduct, was not reasonably discoverable at the time it occurred. The

complex and obscured nature of Defendant's conduct prevented RANI from discovering the true source and scope of the injury, which through discovery, RANI anticipates will continue to evolve.

58.     Accordingly, RANI asserts that the filing of its claims is timely under the discovery rule, and any applicable statute of limitations should be tolled to reflect the date of discovery.

## VII.   DAMAGES

59.     As a direct and proximate result of numerous breaches of the Management Agreement by Defendant, RANI has suffered significant and measurable damages in an amount that is presently known to be at least $2,200,000 and increasing. Discovery in this matter has not yet commenced, and RANI anticipates uncovering further damages once it learns of the full extent of the breaches and failures.

60.     RANI respectfully requests a trial by jury for all claims and issues in its Complaint to which it is or may be entitled to a trial by jury.

## VIII.   REQUEST FOR RELIEF

WHEREAS PREMISES CONSIDERED, RANI prays for the following relief:

a.  Enter a judgment in favor of RANI on its breach of contract claim, or alternatively, its unjust enrichment claim, against Defendant Change Healthcare Technology Enabled Services, LLC for a principal amount of actual damages of $2,200,000 or another amount determined at trial, after deducting any applicable credits, along with interest from the date of breach until the amount is fully paid;

b.  Enter an Order in favor of RANI against Change Healthcare Technology Enabled Services, LLC on its negligence, fraudulent inducement, and tortious interference with prospective business relationship claims in an amount to be determined at trial;

4937-1106-0345

c.  Enter an Order mandating Defendant to transfer to RANI its accounts and data for the period of 2021 through 2023;

d.  Award an Order for damages, including lost profits and consequential damages as allowed by law in an amount to be determined by the trier of fact;

e.  Award reasonable attorneys' fees, costs, and expenses;

f.  Award pre and post judgment interest on any amount awarded; and

g.  Award and other further relief the Court deems just and proper.

Dated: March 11, 2026                    Respectfully submitted,

                                         **NELSON MULLINS RILEY & SCARBOROUGH LLP**

                                         By: */s/ Craig D. Dillard*
                                         **Craig D. Dillard**
                                         Texas State Bar No. 24040808 (*Pro Hac Vice Motion Forthcoming*)
                                         Craig.Dillard@nelsonmullins.com
                                         **Jason P. Sharp**
                                         Texas State Bar No. 24039170 (*Pro Hac Vice Motion Forthcoming*)
                                         Jason.Sharp@nelsonmullins.com
                                         **Kiara C. Gradney**
                                         Texas State Bar No. 24097754 (*Pro Hac Vice Motion Forthcoming*)
                                         Kiara.Gradney@nelsonmullins.com
                                         1111 Bagby Street, Suite 2100
                                         Houston, Texas 77002
                                         Telephone:  346-646-6670
                                         Facsimile:   346-241-3758

                                         **Katherine "Katy" Spicer** ISB# 11853
                                         Nelson Mullins Riley & Scarborough LLP
                                         901 15th Street NW, Suite 1200
                                         Washington, DC 20005
                                         Telephone:  202-689-2917
                                         Email: katy.spicer@nelsonmullins.com

                                         **ATTORNEYS FOR PLAINTIFF**

4937-1106-0345

# EXHIBIT A



**Per-Sé**
TECHNOLOGIES®

Your Health Is The Bottom Line



5995 Windward Parkway
Alpharetta, GA 30005
404.338.6000 Tel
404.338.6101 Fax

May 13, 2011

Scott Venera
Practice Administrator
Radiology Associates of North Idaho, Inc.
700 West Ironwood Dr.
Suite 110
Coeur d'Alene, ID 83814

Dear Mr. Venera:

Welcome to PST Services, Inc., a McKesson company. Thank you for selecting our company for your practice's business management needs. Enclosed please find a fully executed *Practice Management Services Agreement and Prior Accounts Receivable Billing Services Agreement,* for your records.

Thank you for the confidence you have placed in Per-Se. We value your patronage and look forward to a long and mutually rewarding relationship.

Sincerely,

Steven J. Spokane
Vice President, Marketing and Customer Retention
Revenue Management Solutions

Enclosure

cc:  Mike Tomei
     Patrick Free

**CONFIDENTIAL AND PROPRIETARY**

Client Name:        Radiology Associates of North Idaho, Inc.

Contract Number:    RMS138312

## PRACTICE MANAGEMENT SERVICES AGREEMENT

THIS PRACTICE MANAGEMENT SERVICES AGREEMENT ("Agreement") is made and entered into by and between PST Services, Inc. (a McKesson company), a Georgia corporation ("Per-Se") and Radiology Associates of North Idaho, Inc., a corporation organized under the laws of the State of Idaho ("Client"), as of April 29, 2011 (the "Effective Date").

NOW, THEREFORE, in consideration of the covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Client and Per-Se agree as follows:



**CONFIDENTIAL AND PROPRIETARY**

Client Name:        Radiology Associates of North Idaho, Inc.
Contract Number:    RMS138312

**CONFIDENTIAL AND PROPRIETARY**

Client Name:    Radiology Associates of North Idaho, Inc.
Contract Number:    RMS138312

**CONFIDENTIAL AND PROPRIETARY**

Client Name:      Radiology Associates of North Idaho, Inc.
Contract Number:   RMS138312

RADIOLOGY ASSOCIATES OF NORTH IDAHO, INC.

By: _____

Print Name: _Albert Martinez, MD_

Title: _President RANI_

Date: _5-5-11_

Tax ID#:        20-1072226

PST SERVICES, INC.

By: _____

Print Name: _Steven J. Spokane_

Title: _VP, Marketing and Customer Retention_

Date: _5.13.11_

**CONFIDENTIAL AND PROPRIETARY**

Client Name:       Radiology Associates of North Idaho, Inc.
Contract Number:   RMS138312

## SCHEDULE 1

## SCOPE OF SERVICES



**CONFIDENTIAL AND PROPRIETARY**

Client Name:        Radiology Associates of North Idaho, Inc.
Contract Number:    RMS138312

**CONFIDENTIAL AND PROPRIETARY**

Client Name:    Radiology Associates of North Idaho, Inc.

**CONFIDENTIAL AND PROPRIETARY**



CONFIDENTIAL AND PROPRIETARY

Client Name:    Radiology Associates of North Idaho, Inc.

Contract Number:    RMS138312

## SCHEDULE 2

## SERVICE FEES



CONFIDENTIAL AND PROPRIETARY

**CONFIDENTIAL AND PROPRIETARY**

CONFIDENTIAL AND PROPRIETARY

Client Name:        Radiology Associates of North Idaho, Inc.
Contract Number:    RMS138312

**CONFIDENTIAL AND PROPRIETARY**

Client Name:     Radiology Associates of North Idaho, Inc.
Contract Number:  RMS138312

# SCHEDULE 3

## TRANSITION SPECIFICS



**CONFIDENTIAL AND PROPRIETARY**

Client Name:      Radiology Associates of North Idaho, Inc.
Contract Number:   RMS138312

**SCHEDULE 4**

**BUSINESS ASSOCIATE AGREEMENT**



**CONFIDENTIAL AND PROPRIETARY**

Client Name:     Radiology Associates of North Idaho, Inc.
Contract Number:   RMS138312

**CONFIDENTIAL AND PROPRIETARY**

Client Name:       Radiology Associates of North Idaho, Inc.
Contract Number:   RMS138312

**CONFIDENTIAL AND PROPRIETARY**

Client Name:     Radiology Associates of North Idaho, Inc.
Contract Number:    RMS138312

CONFIDENTIAL AND PROPRIETARY

Client Name:        Radiology Associates of North Idaho, Inc.
Contract Number:    RMS138312

## EXHIBIT A

## CONFIDENTIALITY AGREEMENT

RECIPIENT: _____    **RADIOLOGY ASSOCIATES OF NORTH IDAHO, INC.**

By: _____           By: _____

Print Name: _____   Print Name: _Albert Martinez, MD_

Title: _____         Title: _President, RANI_

Date: _____          Date: _5-5-11_

**COVER SHEET / PRACTICE MANAGEMENT SERVICES AGREEMENT**
**PER-SE TECHNOLOGIES SERVICES**

MAY 1 0 2011

| TO: PRISCILLA INCH | Revised : 01/09/2008 | DATE OF THIS NOTICE: |
|---|---|---|

Sections I & II to be completed by Sales/Operations

## SECTION I:

(CONTRACT) OFFICIAL CLIENT NAME:

A.K.A. **Radiology Associates of North Idaho, Inc**

CIRCLE ONE: **NEW**    AMENDMENT I    RENEWAL    OTHER

PRODUCT / CENTER NAME / CENTER NUMBER: **Detroit Radiology**

SPECIALTY: **Radiology**    LEAD ORIGIN: **RSNA Tarde Show**

INCUMBENT: **Local Billing Company**    NUMBER OF PROVIDERS: **13**

ACCOUNT MANAGER: _____    OPERATIONS: **Patrick Free**

SALESPERSON: **Mike Tomei**    REGIONAL VP: **Patrick Free**

SENIOR VP: _____

CLIENT CONTACT:

NAME: Scott Venera, *Practice Administrator*    PHONE: **(208) 666-2376**    FAX: _____

CONTRACT NOTIFICATION ADDRESS: *700 West Ironwood Dr, Suite 110, Coeur d'Alene, ID 83814*

## SECTION II:

All changes to the agreement must be disclosed and approved prior to submission. Otherwise, the agreement will be returned unsigned.

STANDARD FORM:    YES_____ NO_____    SECTIONS CHANGED: _____

| EXCEPTION | APPROVED BY | DATE |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

## SECTION III:

START DATE: **7/1/2011**    EFFECTIVE DATE: **4/29/2011**    RENEWAL DATE: **4/29/2014**

CLIENT'S DATE OF SIGNATURE: **5/5/2011**    FEE TYPE: **contingency**

POSTAGE FEE: **included**    PRE-CO: _____

BUDGET/PRICING MODEL INFORMATION:

APPROVED BY: *SM*    *5/11/11*

| | YEAR 1 | YEAR 2 | YEAR 3 | TOTAL |
|---|---|---|---|---|
| REVENUE: | $ 314,600 | $ 314,600 | $ 3,124,600 | $ 629,200 |
| EBITDA MARGIN $: | | | | $ - |
| EBITDA MARGIN %: | | | | $ - |

REVIEWED BY:    FINANCE _____    DATE _____

FINANCE COMMENTS: _____

LEGAL *Execution Copy.*    DATE _____

LEGAL COMMENTS: _____

EXECUTIVE _____    DATE _____

EXECUTIVE COMMENTS: _____

COVER LETTER APPROVAL: _____    DATE _____

# MCKESSON

**RMS Pricing Model**
**KOOTENAI**

| | |
|---|---|
| Client Name | KOOTENAI |
| Client Specialty | RAD |
| Processing Location | RAD - Detroit |

## Practice Information

| | KOOTENAI PROFESSIONAL | | KOOTENAI MRI (Prof. Component) | | KOOTENAI Outpatient (Prof. Component) | | KOOTENAI TOTAL PROFESSIONAL | |
|---|---|---|---|---|---|---|---|---|
| Volume Procedures | 70,775 | | 10,613 | | 76,824 | | 158,212 | |
| Annualized Charges | 4,434,922 | Client Yield $34.69 | 15,605,840 | Client Yield $91.31 | 23,429,689 | Client Yield $37.32 | 43,470,451 | Client Yield $39.77 |
| Ann. Net Collections | 2,455,509 | | 969,083 | | 2,867,411 | | 6,292,003 | |
| GCR | 55.4% | | 6.2% | | 12.2% | | 14.5% | |

## Salary Data

| | PROFESSIONAL | | MRI (Prof. Component) | | Outpatient (Prof. Component) | | TOTAL PROFESSIONAL | |
|---|---|---|---|---|---|---|---|---|
| On-Shore Production | 1.7 | | 0.4 | | 2.9 | | 5.0 | |
| Ops Management | 0.1 | | 0.0 | | 0.2 | | 0.3 | |
| Account Management | 0.1 | | 0.0 | | 0.1 | | 0.2 | |
| Support | - | All-Inclusive Productivity | - | All-Inclusive Productivity | - | All-Inclusive Productivity | - | All-Inclusive Productivity |
| Offshore | 1.0 | | - | | - | | 1.0 | |
| Other | - | 2188 | - | 2250 | - | 2250 | - | 2197 |
| | | | | | | | | |
| Total FTE's | 2.9 | | 0.5 | | 3.2 | | 6.5 | |
| | | | | | | | | |
| Offshore % | | | | | | | | |

## P&L

| | | PROFESSIONAL | | MRI (Prof. Component) | | Outpatient (Prof. Component) | | TOTAL PROFESSIONAL | |
|---|---|---|---|---|---|---|---|---|---|
| Radiology Fee | | 5.00% | | 5.00% | | 5.00% | | 5.00% | |
| Charging for Postage separately? | | No | | No | | No | | No | |
| Offshoring? | | Yes | | No | | No | | No | |
| MPV7? | | No | | No | | No | | No | |
| | | | | | | | | | |
| Billed revenue | | $ 122,775 | | $ 48,454 | | $ 143,371 | | $ 314,600 | |
| Postage Revenue | | $ - | | $ - | | $ - | | $ - | |
| MPF Revenue?  Yes | | $ - | | $ - | | $ - | | $ - | |
| Other | | $ - | | $ - | | $ - | | $ - | |
| | | | | | | | | | |
| Revenue Total | | $ 122,775 | | $ 48,454 | | $ 143,371 | | $ 314,600 | |
| | | 39% | | 15% | | 46% | | 100% | |
| | | | | | | | | | |
| Production Salaries | 12.00 | $ 42,336 | 34.5% | $ 10,034 | 20.7% | $ 72,632 | 50.7% | $ 125,001 | 39.7% |
| Ops Management Salaries | 29.38 | $ 6,478 | 5.3% | $ 1,535 | 3.2% | $ 11,114 | 7.8% | $ 19,127 | 6.1% |
| Account Management Salaries | 29.95 | $ 3,824 | 3.1% | $ 1,509 | 3.1% | $ 4,465 | 3.1% | $ 9,798 | 3.1% |
| Support Salaries | 18.81 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Offshore Salaries | 9.25 | $ 19,240 | 15.7% | $ - | 0.0% | $ - | 0.0% | $ 19,240 | 6.1% |
| Overtime | 0.0% | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Payroll taxes | 8.8% | $ 4,632 | 3.8% | $ 1,151 | 2.4% | $ 7,763 | 5.4% | $ 13,546 | 4.3% |
| Workers compensation | $23.41 | $ 524 | 0.4% | $ 127 | 0.3% | $ 889 | 0.6% | $ 1,539 | 0.5% |
| Health insurance | $562 | $ 12,579 | 10.2% | $ 3,047 | 6.3% | $ 21,354 | 14.9% | $ 36,979 | 11.8% |
| Other employee assistance | 2.4% | $ 1,263 | 1.0% | $ 314 | 0.6% | $ 2,117 | 1.5% | $ 3,694 | 1.2% |
| Other S&W | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| | | | | | | | | | |
| S&W Total | | $ 90,875 | 74.0% | $ 17,716 | 36.6% | $ 120,333 | 83.9% | $ 228,925 | 72.8% |
| | | | | | | | | | |
| Postage | 0.8% | $ 992 | 0.8% | $ 392 | 0.8% | $ 1,159 | 0.8% | $ 2,543 | 0.8% |
| Intercompany Laser | 7.6% | $ 9,361 | 7.6% | $ 3,694 | 7.6% | $ 10,932 | 7.6% | $ 23,987 | 7.6% |
| Facility cost | $15.00 | $ 4,193 | 3.4% | $ 1,016 | 2.1% | $ 7,118 | 5.0% | $ 12,327 | 3.9% |
| Utilities | 20.0% | $ 839 | 0.7% | $ 203 | 0.4% | $ 1,424 | 1.0% | $ 2,465 | 0.8% |
| Telephone and data lines | $80.00 | $ 1,789 | 1.5% | $ 433 | 0.9% | $ 3,037 | 2.1% | $ 5,259 | 1.7% |
| Supplies | $80.00 | $ 1,789 | 1.5% | $ 433 | 0.9% | $ 3,037 | 2.1% | $ 5,259 | 1.7% |
| Travel | 500 | $ 2,342 | 1.9% | $ 924 | 1.9% | $ 2,734 | 1.9% | $ 6,000 | 1.9% |
| Outside services | 0.8% | $ 1,004 | 0.8% | $ 396 | 0.8% | $ 1,173 | 0.8% | $ 2,573 | 0.8% |
| Equipment rent | 0.3% | $ 328 | 0.3% | $ 129 | 0.3% | $ 383 | 0.3% | $ 840 | 0.3% |
| Insurance and taxes | 0.0% | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Repairs and maintenance | 0.0% | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Legal and accounting | 0.0% | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| MPF Basic Users | 0 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| MPF Intermediate Users | 2 | $ 937 | 0.8% | $ 370 | 0.8% | $ 1,094 | 0.8% | $ 2,400 | 0.8% |
| MPF Advanced Users | | $ 1,171 | 1.0% | $ 462 | 1.0% | $ 1,367 | 1.0% | $ 3,000 | 1.0% |
| MPF Training | 1 | $ 872 | 0.7% | $ 344 | 0.7% | $ 1,018 | 0.7% | $ 2,233 | 0.7% |
| MPV Subscription | 0.195% | $ 2,557 | 2.1% | $ 1,009 | 2.1% | $ 2,986 | 2.1% | $ 6,553 | 2.1% |
| PC Lease | $49.32 | $ 1,103 | 0.9% | $ 267 | 0.6% | $ 1,872 | 1.3% | $ 3,242 | 1.0% |
| | | | | | | | | | |
| OOE Total | | $ 29,276 | 23.8% | $ 10,073 | 20.8% | $ 39,333 | 27.4% | $ 78,882 | 25.0% |
| | | | | | | | | | |
| EBITDA | | $ 2,624 | | $ 20,664 | | $ (16,295) | | $ 6,993 | |
| | | | | | | | | | |
| Incremental Margin | | 14.6% | | 51.4% | | 5.5% | | 16.1% | |
| | | | | | | | | | |
| Target Margin | | 26.2% | | 26.2% | | 26.2% | | 26.2% | |
| | | | | | | | | | |
| Exceeds Office Margin? (Y/N) | | No | | Yes | | No | | No | |

| | PROFESSIONAL | | MRI | | Outpatient | | TOTAL | |
|---|---|---|---|---|---|---|---|---|
| Revenue | $ 122,775 | | $ 48,454 | | $ 143,371 | | $ 314,600 | |
| S&W | $ 90,875 | | $ 17,716 | | $ 120,333 | | $ 228,925 | |
| OOE | $ 29,276 | | $ 10,073 | | $ 39,333 | | $ 78,882 | |
| EBITDA | $ 2,624 | | $ 20,664 | | $ (16,295) | | $ 6,993 | |
| Margin | 14.6% | | 51.4% | | 5.5% | | 16.1% | |
| | | | | | | | | |
| S&W% | 74.0% | | 36.6% | | 83.9% | | 72.8% | |
| OOE% | 23.8% | | 20.8% | | 27.4% | | 25.0% | |
| | | | | | | | | |
| Client Yield | $ 34.69 | | $ 91.31 | | $ 37.32 | | $ 39.77 | |
| Per-Se Yield | $ 1.73 | | $ 4.57 | | $ 1.87 | | $ 1.99 | |
| Effective Fee | 5.0% | | 5.0% | | 5.0% | | 5.0% | |

## Ruggles, Cheryl

| | |
|---|---|
| **From:** | Leonard, Patrick |
| **Sent:** | Thursday, May 12, 2011 9:28 PM |
| **To:** | Ruggles, Cheryl |
| **Cc:** | Wood, Ben; Nelson, Leslie |
| **Subject:** | RE: Contracts for this week |

Approved 8x

---

**From:** Ruggles, Cheryl
**Sent:** Thursday, May 12, 2011 3:46 PM
**To:** Leonard, Patrick
**Cc:** Wood, Ben; Nelson, Leslie
**Subject:** Contracts for this week

Hi Pat,
Attached please find the following contracts for your review and approval:

1. Tri-State Radiology Associates - Amend I
2. Corbin Radiology - PMSA (renew)
3. Spectrum Medical Group - Amend VI
4. Modesto Radiological Medical Group - Addendum 2
5. Central Brevard Radiology - Amend I
6. Virtual Radiologic Corporation - MSA (new)
7. Radiology Associates of North Idaho - PMSA & PARBSA (new)
8. Pathology Associates of South Texas - Amend II

Steve will be here in the morning to sign with your approval.

Thank you,

Cheryl Ruggles
Contract Administrator
**McKesson Corporation**
5995 Windward Parkway
Mail Stop 5102
Alpharetta, GA 30005
(direct) 404.338.4696
**(fax) 678.459.0840 Please note new fax #**
Cheryl.Ruggles@McKesson.com
**www.McKesson.com**

1

Print page | Close

# FedEx

**Detailed Results**

Tracking no.: 794757765339

*Radiology Assc. North Idaho*

Select time format: **12H**

## Delivered

**Delivered**
Signed for by: L.PISELLI

| Shipment Dates | Destination |
|---|---|
| Ship date   May 13, 2011<br>Delivery date   May 17, 2011 11:47 AM | COEUR D ALENE, ID<br>Signature Proof of Delivery |

## Shipment Options

**Hold at FedEx Location**
Hold at FedEx Location service is not available for this shipment.

## Shipment Facts

| Service type | FedEx 2Day Envelope | Delivered to | Mailroom |
|---|---|---|---|
| Weight | 0.5 lbs/.2 kg | Reference | 400794 |

## Shipment Travel History

Select time zone: Local Scan Time

All shipment travel activity is displayed in local time for the location

| Date/Time | Activity | Location | Details |
|---|---|---|---|
| May 17, 2011 11:47 AM | **Delivered** | COEUR D ALENE, ID | |
| May 17, 2011 9:06 AM | On FedEx vehicle for delivery | COEUR D'ALENE, ID | |
| May 16, 2011 9:02 AM | At local FedEx facility | COEUR D'ALENE, ID | |
| May 16, 2011 9:01 AM | At local FedEx facility | COEUR D'ALENE, ID | Package not due for delivery |
| May 16, 2011 8:20 AM | At local FedEx facility | COEUR D'ALENE, ID | |
| May 15, 2011 8:38 PM | At local FedEx facility | SPOKANE, WA | |
| May 15, 2011 3:39 PM | Departed FedEx location | MEMPHIS, TN | |
| May 15, 2011 5:52 AM | Arrived at FedEx location | MEMPHIS, TN | |
| May 14, 2011 10:45 PM | At local FedEx facility | CHATTANOOGA, TN | |
| May 14, 2011 5:34 PM | Left FedEx origin facility | ALPHARETTA, GA | |
| May 13, 2011 9:41 PM | At local FedEx facility | ALPHARETTA, GA | |
| May 13, 2011 7:21 PM | Picked up | ALPHARETTA, GA | |
| May 13, 2011 2:16 PM | Shipment information sent to FedEx | | |

# EXHIBIT B



## Memorandum

To: Radiology Associates of North Idaho, Inc.

From: Melissa Cataldo, Contract Administrator

Date: May 11, 2018

Subject: Amendment Number P201810022926

Attached please find a fully executed copy of *Amendment P201810022926 to your April 29, 2011 Practice Management Services Agreement*, for your records.

If you have any questions, please feel free to contact, Linda Oza at Linda.Oza@McKesson.com.

Thank you for the confidence you have placed in Change Healthcare Technology Enabled Services, LLC. We value your patronage and look forward to a long and mutually rewarding relationship.

Sincerely,

Melissa Cataldo
Technology Enabled Services
Contract Operations

cc: Christopher Robertson
    Patrick Free
    Linda Oza
    Mark Matteo

Change Healthcare      p   404-338-5555      changehealthcare.com
5995 Windward Pkwy     F   678-459-0840
Alpharetta, GA  30005

**CONFIDENTIAL AND PROPRIETARY**

Client: Radiology Associates of North Idaho, Inc.
Amendment Number: P201810022926

## AMENDMENT

This amendment (the "**Amendment**") amends the Practice Management Services Agreement that became effective on April 29, 2011, as amended (the "**Agreement**"), between Radiology Associates of North Idaho, Inc. ("**Client**") and Change Healthcare Technology Enabled Services, LLC, successor-in-interest to PST Services, Inc., ("**Service Provider**") and is effective as of the latest date in the signature block below.

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. <u>Name Change</u>. The parties acknowledge and agree that all references to "PST" or "Per-Se" in the Agreement or any amendment or addendum or exhibit or schedule to the Agreement shall be deemed to have been changed to Change Healthcare Technology Enabled Services, LLC ("**Service Provider**").

2. <u>Section 2. Term</u>. The term of this Agreement shall be extended for a period of three (3) years beginning on July 1, 2018. Thereafter, the Agreement shall renew for additional one (1) year terms, unless either party delivers to the other party, with not less than ninety (90) days prior written notice to the expiration of the then-current term, written notice of its intent not to renew.

3. This Amendment may be executed in multiple counterparts, each of which shall be deemed an original and all of which together shall be deemed one and the same instrument.

4. Capitalized terms used herein and not otherwise defined have the same meaning as in the Agreement. In the event any term or condition of this Amendment is inconsistent with any term or condition of the Agreement, the terms of this Amendment will control. Except as stated above, all terms of the Agreement shall remain in full force and effect. Service Provider and Client represent and warrant that they have the full power and authority to enter into this Amendment, that there are no restrictions or limitations on their ability to perform under this Amendment, and that the person executing this Amendment has the full power and authority to do so.

IN WITNESS WHEREOF, and in agreement hereto, the parties have executed this Amendment on the dates set forth below.

**RADIOLOGY ASSOCIATES OF NORTH IDAHO, INC.**

By: _____

Print Name: ALBERT J MARTINEZ MD

Title: PRESIDENT

Date: 05/07/2018

**CHANGE HEALTHCARE TECHNLOGY ENABLED SERVICES, LLC**

By: _____

Print Name: Christopher W. Robertson

Title: SVP

Date: 5.11.18